IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Irvin Dyer,  )
  114-118 Pipera Tunari  )
  Villa No. 2  )
  Bucharest, Romania,  )
      Petitioner  )
         )    Case No.
         )
v.  )
         )
         )
The Lincoln Group LLC,  )
  801 Pennsylvania Ave., N.W.  )
  Washington, D.C. 20004,  )
      Respondent  )
         )

**Petition to Confirm Arbitration Award**

Petitioner Irvin Dyer files this petition to confirm a commercial arbitration award against Respondent The Lincoln Group, LLC issued by the American Artbitration Association in Washington, D.C.

**JURISDICTION**

1. Jurisdiction is based on 28 U.S.C. § 1331 and 9 U.S.C. §§ 202 & 203. Jurisdiction lies under 9 U.S.C. § 202 in that:

    a. The arbitration agreement, a copy of which is attached as Exhibit A and is incorporated herein by reference, is considered commercial; and

    b. The arbitration agreement envisages performance outside the United States in the country of Iraq.

2. Jurisdiction is based on 9 U.S.C. § 203 in that this is an action or proceeding falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

3. Jurisdiction is based on 28 U.S.C. § 1331 in that this is an action or proceeding falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

## VENUE

4. Venue is proper in this District because it is the District designated by the parties as the place of arbitration.

## PARTIES

5. Petitioner Irvin Dyer is an American citizen, currently residing in Bucharest, Romania.

6. Defendant Lincoln Group is a corporation and its headquarters is located in the District of Columbia.

## FACTS

7. On May 26, 2005, the parties entered into a written independent advisor agreement (the "Agreement"), in which Petitioner agreed to perform services for the defendant in Iraq. Exhibit A.  Section 13(1) of the Agreement provides that in the event of a disagreement between the parties, any party could seek mediation, and if unsuccessful, arbitration with the American Arbitration Association in Washington, D.C.

8. After a dispute arose under the Agreement, Petitioner Dyer commenced an arbitration thereunder with the American Arbitration Association in Washington, D.C.

9. On May 15, 2007, after a hearing, the Arbitrator issued an award to Petitioner, and against Respondent, in the amount of $15,000.  A copy of the Arbitration Award is attached as

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Irvin Dyer,<br>  114-118 Pipera Tunari<br>  Villa No. 2<br>  Bucharest, Romania,<br>         Petitioner<br><br>v.<br><br>The Lincoln Group LLC,<br>  801 Pennsylvania Ave., N.W.<br>  Washington, D.C.  20004,<br>         Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

NOTICE OF APPLICATION FOR A JUDGMENT
CONFIRMING AN ARBITRATION AWARD

To:   The Lincoln Group LLC
      801 Pennsylvania Ave., N.W.
      Washington, D.C.  20004

   Please take Notice that on this, the second day of November 2007, Petitioner Irvin Dyer has made application to the United States District Court for the District of Columbia for entry of a judgment confirming an award of the American Arbitration Association against Respondent The Lincoln Group.   A copy of this Petition is attached hereto.

                                    Respectfully submitted,

                                    /s/ Terrance Reed
                                    Terrance G. Reed
                                    D.C. Bar # 367172
                                    Lankford, Coffield & Reed PLCC
                                    120 North St. Asaph St.
                                    Alexandria, VA 22314
                                    703-299-5000
                                    Counsel for Petitioner

Exhibit B and is incorporated herein by reference.

   10.  After receipt of the award decision, Petitioner made a demand on May 16, 2007 upon Respondent for payment of the award, but Respondent has not done so since then.

   11.  Under the Arbitration Award, Respondent Lincoln Group had thirty (30) days in which to make payment. More than thirty days has passed since the issuance of the award, and Respondent has not made any payment to Petitioner.

## PRAYER

WHEREFORE, pursuant to 9 U.S.C. § 207, Petitioner asks this Court confirm the Arbitration Award, and enter a judgment of $15,000 in favor of Petitioner Irvin Dyer and against Respondent Lincoln Group, with interest at the statutory rate since May 15, 2007.

*Terrance Reed*
Terrance G. Reed
D.C. Bar # 367172
Lankford, Coffield & Reed PLCC
120 North St. Asaph St.
Alexandria, VA 22314
703-299-5000

Counsel for Petitioner

3



### INDEPENDENT ADVISOR AGREEMENT

This INDEPENDENT ADVISOR AGREEMENT (the "Agreement") is made and entered into between the person signing below, an independent contractor hereafter referred to as "Advisor", and Lincoln Group, LLC hereafter referred to as "Lincoln" on the date first mentioned above.

In consideration of the covenants and conditions hereinafter set forth, Lincoln and Advisor agree as follows:

1. SERVICES

   Advisor shall engage with Lincoln in supporting W91GXQ-05-C-0006 *Business Center Administrator Services, Iraq* (the "Contract") commencing on May 26, 2005. Advisor will also support Lincoln with investment and business development work in Iraq, with transactions arising out of the Contract and independently. This includes, but is not limited to, contributing services, contacts, ideas, opportunities, transactions, investments, inventions, processes, registrations, and any other contribution that may assist Lincoln in conceiving, executing, or developing investments, sales, contracts, transactions, or other opportunities worldwide ("Work").

2. REPORTING

   Advisor shall report to Project Manager for the Contract ("Project Manager") and provide a semi-monthly written report to Lincoln on assignment progress.

3. TERM

   This Agreement shall commence on the commencement date above and will continue for one (1) year from such date. Lincoln may terminate the use of Advisor's services at any time without cause on giving Advisor six (6) months' written notice (or immediately upon demonstrating that Advisor has materially breached the terms of this Agreement) and without further obligation to Advisor except for payment due for pre-agreed business expenses and services prior to date of such termination and except for fees, commissions and equity participation as described Section 4. Advisor may terminate provision of services at any time without cause after giving Lincoln six (6) months' written notice (or immediately upon demonstrating that Lincoln has materially breached the terms of this Agreement). Termination of this Agreement or termination of services shall not affect the provisions under Sections 6-13, hereof, which shall survive any termination.

4. PAYMENT

   Advisor will be paid for Work performed under this Agreement as follows:

   (a) Base salary of $120,000 per annum, pro-rated for days engaged in full-time work for Lincoln and paid monthly. Base salary will be paid only for days submitted weekly on Lincoln's standard timecard and approved by Project Manager no later than three days after the end of any week during which Advisor worked.

   (b) Lincoln will provide Advisor with resources to execute Work successfully including business expenses pre-agreed in writing by the Project Manager. Business expenses shall include business class air travel when Project Manager agrees in writing that it would benefit Lincoln for Advisor to accompany government or commercial clients or prospective

Lincoln Group
1420 K Street NW, 10th Floor
Washington DC 20005

+1 202 595 1330 Office
+1 202 595 0208 Fax
www.lincolngroup.com

EXHIBIT A



clients who are traveling by business class. Any payment due under this sub clause shall be paid within fourteen (14) days of Advisor on a monthly basis supplying to Lincoln copies of receipted invoices and such other proof of payment as Lincoln shall reasonably require.

(c) For clients sourced and introduced by Advisor to Lincoln or any person, firm or company which Lincoln controls, Lincoln will pay Advisor eight percent (8%) of the net project profits earned by Lincoln and received from that client for a period of two (2) years from the date of first introduction.

(d) Profit-sharing payments will be made semi-annually or monthly as accounting permits.

(e) Advisor shall provide Lincoln with a list of clients and investors which Advisor has sourced and introduced, and Lincoln will return an accepted copy thereof to Advisor.

(f) Any fees or profit-share will be the total commission or fee that will be payable to all brokers, agents, or intermediaries between Lincoln and the ultimate client or investor. Where another broker, agent, or intermediary commission is required, it shall be deducted from the monies due to Advisor.

(g) For investments made by Lincoln in Works introduced by Advisor, Advisor will be granted eight percent (8%) of Lincoln's equity carried interest in such investment. These shares will be sold pursuant to a restricted stock purchase agreement in customary form. Lincoln will have the right to repurchase these shares from Advisor should Advisor's relationship with Lincoln end for any reason. This option will lapse with respect to 1/24 of the shares at the end of each one month period after Advisor's receipt of the shares.

(h) All payments, commissions, fees, and equity due to Advisor hereunder shall be paid to such bank account as Advisor shall from time to time advise Lincoln in writing and the receipt of such recipient person, firm or company shall be a sufficient discharge for Lincoln of it's liability hereunder.

(i) Lincoln will not withhold taxes from any payments, commissions, fees, and equity due to Advisor hereunder. Advisor is responsible for its own tax liabilities, wherever and however they may arise.

5. Purposefully left blank

6. **HOSTILE ENVIRONMENT**

Advisor acknowledges that in certain countries, including, but not limited to, Iraq, he/she will be working in a hostile environment and that he/she is aware of the associated risks including, but not limited to: kidnapping, assault, theft, civil unrest, war, insurrection, bombs, biological weapons, chemical weapons, and other weapons of mass destruction. Advisor further acknowledges that he/she will be working in substandard environmental conditions and be subject to health hazards including, but not limited to: sickness, disease, and pollution. Advisor waives any and all claims they may now and in the future have against, and releases from all liability and covenants and agrees not to sue Lincoln, and its officers, directors,



employees, agents or contractors ("Staff"), for any personal injury, death, and property damages, expenses or loss sustained by Advisor due to any cause whatsoever including, without limitation, negligence or the breach of any duty statutory or otherwise, on the part of Lincoln or its Staff. Furthermore, Advisor agrees not to engage in any inappropriate actions, undertake any illegal activity, or otherwise endanger the safety and security of themselves, Lincoln or its Staff, other than travel as is reasonably required to perform under Agreement.

7. **CONFIDENTIALITY AND OWNERSHIP**

    (a) Advisor agrees, during Advisor's engagement with Lincoln, not to improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that Advisor will not bring onto the premises of Lincoln any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

    (b) Advisor agrees, during Advisor's engagement with Lincoln, that external communications will be made only on Lincoln-approved stationary, including, but not limited to, letterhead, business cards, and email signature blocks. Advisor will not give any other business card to any person or organization with whom Lincoln would benefit from a relationship. All electronic communication directly or indirectly related to Lincoln or areas in which it has an interest will be only through Lincoln's email system. Lincoln will furnish Advisor with an email account for that purpose.

    (c) Advisor recognizes and acknowledges that Lincoln possesses certain confidential information that constitutes a valuable, special, and unique asset. As used herein, the term "Confidential Information" includes all information and materials belonging to, used by, or in possession of Lincoln relating to its projects, investments products, processes, services, technology, inventions, patents, ideas, contracts, financial information, developments, business strategies, pricing, current and prospective customers, marketing plans, and trade secrets of every kind and character, but shall not include (i) information that was already within the public domain at the time the information is acquired by Advisor, or (ii) information that subsequently becomes public through no act or omission of the Advisor. Advisor agrees that all of the Confidential Information is and shall continue to be the exclusive property of Lincoln, whether or not prepared in whole or in part by Advisor and whether or not disclosed to or entrusted to Advisor's custody. Advisor agrees that Advisor shall not, at any time following the execution of this Agreement, use or disclose in any manner any Confidential Information of Lincoln. Lincoln agrees to maintain confidentiality of Advisor's confidential information, as already provided in the Mutual Non-Disclosure agreement between both parties.

    (d) Advisor recognizes that Lincoln has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on Lincoln's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Advisor agrees to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to

3



        use it except as necessary in carrying out Work for Lincoln consistent with Lincoln's agreement with such third party.

(e)     To the extent any inventions, technologies, reports, memoranda, studies, writings, articles, plans, designs, specifications, exhibits, software code, or other materials prepared by Advisor in the performance of Work under this Agreement include material subject to copyright protection, such materials have been specially commissioned by Lincoln and they shall be deemed "work for hire" as such term is defined under U.S. copyright law. To the extent any such materials prepared by Advisor in the performance of Work under this Agreement do not qualify as "work for hire" under applicable law, and to the extent they include material subject to copyright, patent, trade secret, or other proprietary rights protection, Advisor hereby irrevocably and exclusively assigns to Lincoln, its successors, and assigns, all right, title, and interest in and to all such materials. To the extent any of Advisor rights in the same, including without limitation any moral rights, are not subject to assignment hereunder, Advisor hereby irrevocably and unconditionally waives all enforcement of such rights. Advisor shall execute and deliver such instruments and take such other actions as may be required to carry out and confirm the assignments contemplated by this paragraph and the remainder of this Agreement. All documents, magnetically or optically encoded media, and other tangible materials created by Advisor as part of its services under this Agreement shall be owned by Lincoln.

8.     **RETURN OF MATERIALS**

    Advisor agrees that upon termination of this Agreement, Advisor will return to Lincoln all drawings, blueprints, notes, memoranda, specifications, designs, writings, software, devices, documents and any other material containing or disclosing any Confidential Information or proprietary Information of Lincoln. Advisor will not retain any such materials.

9.     **WARRANTIES**

    Advisor warrants that:

(a)     Advisor's agreement to perform the Work pursuant to this Agreement does not violate any agreement or obligation between Advisor and a third party; and

(b)     The Work as delivered to Lincoln will not infringe any copyright, patent, trade secret, or other proprietary right held by any third party; and

(c)     Advisor will execute any proper oath or verify any proper document required to carry out the terms of this Agreement; and

(d)     Advisor's performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by Advisor in confidence or in trust prior to Advisor's engagement by Lincoln; and

(e)     Advisor has not entered into, and will not enter into, any oral or written agreement in conflict with this Agreement; and

4



(f)     The services provided by Advisor shall be performed in a professional manner, and shall be of a high grade, nature, and quality. The services shall be performed in a timely manner and shall meet deadlines agreed between Advisor and Lincoln.

Lincoln warrants that its agreement to support Advisor's Work pursuant to this Agreement does not violate any agreement or obligation between Lincoln and a third party and that it has not entered into, and will not enter into, any oral or written agreement in conflict with this Agreement.

10. **INDEMNITY**

Advisor agrees to indemnify, defend, and hold Lincoln and its successors, officers, directors, agents and employees harmless from any an all actions, causes of action, claims, demands, cost, liabilities, expenses and damages (including attorney's fees) arising out of, or in connection with any breach of the Agreement by Advisor not caused principally and directly by any willful act of Lincoln.

11. **RELATIONSHIP OF PARTIES**

Advisor is an independent contractor of Lincoln. Nothing in this Agreement shall be construed as creating an employer-employee relationship, as a guarantee of future employment or engagement, or as a limitation upon Lincoln's sole discretion to terminate this Agreement as provided in Section 3. Advisor further agrees to be responsible for all of Advisor's federal and state taxes, withholding, social security, insurance, and other benefits. Advisor shall provide Lincoln with satisfactory proof of independent contractor status.

12. **NON-COMPETE; NONSOLICITATION**

During the term of Advisor's engagement and for one (1) year thereafter, Advisor will not, without Lincoln's prior written consent, (a) directly work on any investments, projects, products, or services, or indirectly work on any commercial investments, projects, products, or services, that are competitive with products or services (i) Advisor is reasonably aware are being commercially developed or exploited by Lincoln during Advisor's engagement and (ii) on which Advisor worked or about which Advisor learned Confidential Information during Advisor's engagement with Lincoln; or (b) solicit the employment or engagement of any employee or contractor of Lincoln with whom Advisor has had contact in connection with the relationship arising under this Agreement. During the term of Advisor's full-time engagement with Lincoln, Advisor agrees that any new business or investment opportunities developed ("Opportunities") will be exclusively for Lincoln's benefit, with the exception of those opportunities attached as Exhibit B hereto ("Existing Opportunities"). Lincoln will compensate Advisor for Opportunities in accordance with Section 4. Advisor will not work on any Existing Opportunities during Advisor's full-time engagement with Lincoln, without Project Manager's written agreement in each instance that such work does not conflict with or distract from Advisor's responsibilities to Lincoln. Advisor agrees to diligently adhere to the Conflict of Interest Guidelines attached as Exhibit A hereto. In the event of the termination of Advisor's engagement, Advisor hereby grants consent to notification by Lincoln to Advisor's new employer about Advisor's rights and obligations under this Agreement.

13. **MISCELLANEOUS**

(a)     *Attorney's Fees.* Should either party hereto, or any heir, personal representative, successor or assign of either party hereto, resort to legal proceedings in connection with this Agreement or Advisor's relationship with Lincoln, the party or parties prevailing in such legal proceedings shall be entitled, in addition to such other relief as may be granted, to recover it or their reasonable attorney's fees and costs in such legal proceedings from the non-prevailing party or parties.

5



(b) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of law principles.

(c) <u>Entire Agreement</u>. This Agreement contains the entire agreement and understanding between the parties hereto and supersedes any prior or contemporaneous written or oral agreements, representations and warranties between them respecting the subject matter hereof, with the exception of Lincoln's Non Disclosure Agreement.

(d) <u>Amendment</u>. This Agreement may be amended only by a written agreement signed by Advisor and by a duly authorized representative of Lincoln.

(e) <u>Severability</u>. If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

(f) <u>Construction</u>. The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against either party.

(g) <u>Rights Cumulative</u>. The rights and remedies provided by this Agreement are cumulative, and the exercise of any right or remedy by either party hereto (or by its successor), whether pursuant to this Agreement, to any other agreement, or to law, shall not preclude or waive its right to exercise any or all other rights and remedies.

(h) <u>Nonwaiver</u>. No failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance. All waivers by either party hereto must be contained in a written instrument signed by the party to be charged and, in the case of Lincoln, by an officer of Lincoln or other person duly authorized by Lincoln.

(i) <u>Remedy for Breach</u>. The parties hereto agree that, in the event of breach or threatened breach of Sections 7. or 12. by Advisor, the damage or imminent damage to the value and the goodwill of Lincoln's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that Lincoln shall be entitled to injunctive relief against Advisor in the event of any breach or threatened breach of any of such provisions by Advisor, in addition to any other relief (including damages) available to Lincoln under this Agreement or under law. Lincoln shall be entitled to recover the cost of enforcing the understanding and agreements as reflected herein, including, without limitation, any reasonable attorney's fees incurred.



(j) <u>Notices</u>. Any notice, request, consent or approval required or permitted to be given under this Agreement or pursuant to law shall be sufficient if in writing, and if and when sent by certified or registered mail, with postage prepaid, to Advisor (as noted below), or to Lincoln's principal office, s the case may be.

(k) <u>Assistance</u>. Advisor shall, during and after termination of services rendered, upon reasonable notice, furnish such information and proper assistance to Lincoln as may reasonably be required by Lincoln in connection with work performed by Advisor; provided, however, that such assistance following termination shall be furnished at the same level of compensation as provided in Section 2.

(l) <u>Mediation and Arbitration</u>. Any dispute arising under this Agreement, except for those arising under Sections 7. or 12., shall be resolved through a mediation - arbitration approach. The parties agree to select a mutually agreeable, neutral third party to help them mediate any dispute that arises under the terms of this Agreement. Costs and fees associated with the mediation shall be shared equally by the parties. If the mediation is unsuccessful, the parties agree that the dispute shall be decided by a single arbitrator by binding arbitration under the rules of the American Arbitration Association in the District of Columbia. The decision of the arbitrator shall be final and binding on the parties and may be entered and enforced in any court of competent jurisdiction by either party. The prevailing party in the arbitration proceedings shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings, unless the arbitrator shall for good cause determine otherwise. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, LINCOLN AND ADVISOR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER MATTER INVOLVING THE PARTIES HERETO.

(m) <u>Advice of Counsel</u>. EACH PARTY ACKNOWLEDGES THAT, IN EXECUTING THIS AGREEMENT, SUCH PARTY HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND HAS READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.

In Witness Whereof, the parties have signed this INDEPENDENT ADVISOR AGREEMENT as of the commencement date set forth above.

LINCOLN  
Sign: _____  
Name: BRIAN T SWIFT

ADVISOR  
Sign: _____  
Name: IRVIN R. Dyer III

7

Title: _____    Address: _____

_____

_____

8



**EXHIBIT A**
**LINCOLN GROUP, INC.**
**CONFLICT OF INTEREST GUIDELINES**

It is the policy of Lincoln Group, LLC to conduct its affairs in strict compliance with the letter and spirit of the law and to adhere to the highest principles of business ethics. Accordingly, all officers, employees and independent contractors and independent advisors must avoid activities which are in conflict, or give the appearance of being in conflict, with these principles and with the interests of Lincoln. The following are potentially compromising situations which must be avoided. Any exceptions must be reported to the President and written approval for continuation must be obtained.

1. Revealing confidential information to outsiders or misusing confidential information, other than required by a valid court order or by law. Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to Lincoln is intended. (The INDEPENDENT ADVISOR AGREEMENT elaborates on this principle and is a binding agreement.)

2. Accepting or offering substantial gifts, excessive entertainment, favors or payments which may be deemed to constitute undue influence or otherwise be improper or embarrassing to Lincoln.

3. Knowingly initiating or approving personnel actions affecting reward or punishment of employees or applicants where there is a family relationship or is or appears to be a personal or social involvement (other than as officers of Lincoln appointed by the Board of Directors).

4. Initiating or approving any form of personal or social harassment of employees.

5. Investing or holding outside directorship in suppliers, customers, or competing companies, including financial speculations, where such investment or directorship might influence in any manner a decision or course of action of Lincoln, except where such investment or directorship is disclosed to and approved by Lincoln in advance.

6. Borrowing from or lending to employees, customers or suppliers.

7. Acquiring real estate of interest to Lincoln, without giving Lincoln first right of refusal.

8. Improperly using or disclosing to Lincoln any proprietary information or trade secrets of any former or concurrent employer or other person or entity with whom obligations of confidentiality exist.

9. Unlawfully discussing prices, costs, customers, sales or markets with competing companies or their employees.

10. Making any unlawful agreement with distributors with respect to prices.

11. Improperly using or authorizing the use of any inventions which are the subject of patent claims of any other person or entity.

12. Improper or unauthorized communications through Lincoln's communications media including email, telephones, facsimile, business stationary, and publications.

13. Knowingly engaging in any conduct which is not in the best interest of Lincoln.

Each officer, employee, independent contractor and independent advisor must take every necessary action to ensure compliance with these guidelines and to bring problem areas to the attention of



higher management for review. Violations of this conflict of interest policy may result in discharge without warning.

10



**EXHIBIT B**
**EXISTING OPPORTUNITIES**

1. Helicopter and fixed wing charter services
2. BIAP security bid for Airport Security
3. Somo Oil - crude supply contract with LukOil Romania (including Maersk Oil and BP)
4. Supply of Military products from RomArm Romania. (I am the RomArm exclusive dealer for Iraq)
5. Con-Dem Construction Romania (I am the exclusive dealer for Iraq)
6. El-Nasar Tobacco factory. (bid now submitted and awaiting approval)
7. Steel Case furniture representation for Iraq.
8. Multintruments Ltd. hospital equipment and construction supply.
9. SHH Banking License

11

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

In the Matter of the Arbitration between

    Irvin Dyer, Claimant

    and

    The Lincoln Group, LLC, Respondent

    Re: 16 145 00510 06

### AWARD OF ARBITRATOR

I, the undersigned Arbitrator, having been designated in accordance with the arbitration agreement between the above parties, and having been duly sworn, and having heard the allegations and proofs submitted, do hereby AWARD as set forth below.

Irwin Dyer, Claimant, and The Lincoln Group, LLC, Respondent, entered into an Independent Advisor Agreement effective May 26, 2005. On October 17, 2005, Respondent sent by e-mail to Claimant a termination notice stated to be retroactive to October 1, 2005. The notice did not state whether termination was for cause or not for cause. If for cause, under the terms of the Agreement, Claimant was entitled to six months' notice. Otherwise, he was not entitled to any notice period. The claim filed by Claimant is in the amount of $80,000. Respondent filed a counterclaim in the amount of $20,000.

The record supports findings that: (1) even if the termination was not for cause, under the terms of the Agreement, Claimant would not be entitled to any compensation except for services rendered, (2) the termination notice was effective as of October 17, 2005, (3) Claimant did not render any services after October 17, 2005, (4) Claimant was not compensated for services during a period of one and one half months that occurred prior to October 17, 2005, and (5) the amount of compensation due to Claimant is $15,000.

Accordingly, Respondent shall pay to Claimant the amount of Fifteen Thousand Dollars ($15,000.00) within thirty (30) days of the date of this Award. Neither party prevailed on the major portion of its claims. Accordingly, each party shall bear its own attorney's fees.

The administrative filing and case service fees of the American Arbitration Association, totaling $3,800.00, shall be borne as incurred by the parties. The other administrative fees of the American Arbitration Association, totaling $150.00, shall be borne as incurred by the parties. The fees and expenses of the Arbitrator totaling $3,925.00, shall be borne equally by the parties.

This AWARD is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are hereby denied.

5-15-2007
Date

Patricia Horan Latham, Arbitrator

EXHIBIT B

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

07-1984
RWR

## I (a) PLAINTIFFS

Irvin Dyer

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _77777_
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

The Lincoln Group LLC

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Terrance Reed
120 N. St. Asaph St.
Alexandria, VA 22314
703-299-5000

Case: 1:07-cv-01984
Assigned To : Roberts, Richard W.
Assign. Date : 11/2/2007
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☒ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— 0 —

| ☐ G. *Habeas corpus 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
9 U.S.C. § 203 Petition to Confirm Arbitration Award

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    **DEMAND $**    Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO If yes, please complete related case form.

DATE 11.2.07    SIGNATURE OF ATTORNEY OF RECORD _Tamara I Reed_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

    VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd